LEUPEN *v.* LACKEY, et al.

[No. 623, September Term, 1966.]

20

*Decided November 8, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Joseph F. McBride,* with whom were *Bill L. Yoho, Robert S. Hoyert* and *Roy W. Hooten,* on the brief, for appellant.

*T. Benjamin Weston,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

Disappointed by the paucity of the verdict below, appellant (Leupen) wants us to give him another go at it. He buoys his appeal by a claim that the "Allen charge," as given by the trial judge, is reversible error. Since we cannot agree, his appeal must founder. The agreed statement of facts, edited here and there, follows:

A knowledge of the exact details of the manner in which the accident occurred is unnecessary for the Court to decide the issue before it. Leupen's vehicle was struck from behind by Lackey's (appellee) bus. Leupen maintained that he had stopped his vehicle preparatory to making a left turn in the left of the two southbound lanes of U. S. Route 1 near Beltsville, Maryland, after having given the appropriate turn signal. Lackey contended Leupen had stopped without warning immediately in front of him.

Leupen claimed and offered testimony to prove that he had sustained an injury to his back, that aggravated a pre-existing congenital defect of his back. Lackey, through cross examination, maintained that the severity of the back injury was not as great as maintained by Leupen.

Leupen offered evidence that he had sustained medical expenses in the amount of $375.18; that his vehicle was damaged to the extent of $50.00, not covered by subrogated collision insurance; that he had anticipated future medical expenses of $1,500.00; further, that as a result of parts not being available to repair his automobile he was charged a rental of $1,026.00 for a replacement vehicle; that he lost wages in the amount of $500.00; in all $3,551.18. Lackey disputed the injury, the medical expenses as well as the rental cost and lost wages.

At the close of the evidence the Court instructed the jury, to which no objection was taken. At 2:56 p.m. the jury retired to deliberate. At 4:30 p.m., the jury sent a question to the Court asking for further instruction as to the various traffic laws applicable. At the same time the jury requested further instruction "as to the percentage of proof for or against the plaintiff." The Court thereupon gave additional instruction to the jury. At 4:40 p.m., the jury again retired for further deliberation. At 5:46 p.m., the jury again sent a note to the Court which read: "If the jury is dead-

locked but in favor of the defense does the verdict go to the defense?"

The Court then gave the following instruction:

"The Court can only go so far in its instruction to you, but I would indicate to you that you are instructed that there are many cases in which absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror, as a result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, each one of you should examine the question submitted with candor and with a proper regard and deference to the opinions of the others. It is your duty to decide this case if you can conscientiously do so and you should listen with a disposition to be convinced to each others argument. If your views are contrary to those of the vast majority, you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct."

To which Leupen objected.

Whereupon, the jury returned to deliberate at 5:48 p.m., and returned at 6:14 p.m., with a verdict in favor of Leupen for $500.00.

We seem never to have considered the propriety of the "Allen charge," so called because it was approved by the Supreme Court in *Allen v. United States,* 164 U. S. 492 (1896). The Court, speaking through Mr. Justice Brown, said in that case:

"The seventeenth and eighteenth assignments were taken to instructions given to the jury after the main charge was delivered, and when the jury had returned to the court, apparently for further instructions. These instructions were quite lengthy and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they

should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. These instructions were taken literally from a charge in a criminal case which was approved of by the Supreme Court of Massachusetts in *Commonwealth v. Tuey,* 8 Cush. 1, and by the Supreme Court of Connecticut in *State v. Smith,* 49 Connecticut, 376, 386.

"While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury-room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at the moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions." *Id.* at 501-02.

Leupen, pointing out that *Allen* was a criminal case, argues that the charge is "fatally defective when used in a civil case."

In a criminal case, he says, "there is but one alternative upon which the jury must decide, that is, guilt or innocence." In a civil case other questions such as contributory negligence and damages must be answered. When the Allen charge is given in a civil case the jury, he contends, "is urged to bargain liability versus amount." If the defendant is not liable "he should pay no damages" and, on the other hand, if he is liable, continues Leupen, "the plaintiff's recovery should not be diminished because the liability question was difficult to answer." The verdict, in the case at bar, he complains, was a compromise and no other rational explanation can be made. Since most verdicts contain some element of compromise, necessarily so in many cases, we suspect Leupen must be thinking of the impropriety of the "quotient" verdict. Leupen should recall that his evidence in respect of the extent of his injury, his future medical expenses, the cost of the rented vehicle and his wage claim were all sharply disputed by Lackey. The jury was free to believe or disbelieve all or any part of the disputed evidence. The verdict might well have consisted of medical expenses of $375.18, uninsured vehicle damage of $50.00 and $74.82 for his pain and suffering, and while it may have been the result of a compromise there is nothing to indicate it was a quotient verdict. *Orthopedic Equipment Co. v. Eutsler*, 276 F. 2d 455 (4th Cir. 1960) was a civil case in which the "Allen charge" was approved. There Chief Judge Sobeloff, formerly Chief Judge of this Court, said:

> "We find no error in this instruction, known as the 'Allen charge,' * * *. It is proper for the judge to admonish jurors who are in disagreement to re-examine their opinions in light of the contrary opinions of their fellows, provided it is made equally clear that the jury's verdict must represent the final judgment of each juror, and not merely his acquiescence in a majority view of which he remains conscientiously unconvinced.

> "In this circuit, the Allen charge has been upheld in two fairly recent criminal cases, Orton v. United States, 4 Cir., 1955, 221 F. 2d 632, and Wolin v.

United States, 4 Cir., 1954, 211 F. 2d 770. *We believe its recognition in the criminal field points a fortiori to its acceptability in civil cases, and there is ample authority for its use in civil cases.*

"Nor was the Allen charge inappropriate, as the defendant argues, simply because the foreman of the jury had reported the jurors hopelessly deadlocked. As a practical matter, the charge is customarily given only when the jury appears to have encountered difficulties in reaching unanimity. If the distinction suggested by the defendant were correct, the court would be precluded from giving the charge in the very circumstances when it is needed most. Moreover, the decisional law supports the use of the instruction in a case in which the jury had previously indicated its difficulty." *Id.* at 463. (Emphasis supplied.)

During oral argument Leupen complained that the trial judge evaded answering the question asked by the jury giving instead the "Allen charge." We think it would have been better practice for the judge to have explained to the jury that a unanimous verdict is required unless otherwise stipulated pursuant to Maryland Rule 544. However, while a direct answer to the jury's question does not appear in the record, the "Allen charge" itself, as given, would seem to amount to a negative answer and it seems unlikely the jurors interpreted it otherwise.

It must not be supposed that an Allen charge is proper in every case. There well may be facts and circumstances in a given case which would make such a charge either inadvisable or require the trial judge to exercise great care and restraint in presenting it to the jury. In any case, however, it would be well for the court to keep in mind the language found in 1 Branson's *Instructions to Juries* (3rd ed. A. Reid 1960 Replacement).

"The trial judge may advise an unagreed jury of the importance of their reaching a verdict, if they can do so without surrendering their conscientious convictions. But he cannot go beyond that and say anything to the prejudice of either party. There is no prescribed language that he must use in this connection. What he

may with propriety say must in a large measure be left to his good judgment. But as the exclusive right to agree or not to agree rests with the jury, the judge must not by threat or entreaty attempt to coerce a verdict or to exert his authority to force an agreement; nor must he under any circumstances or in any manner indicate the character of verdict that the jury should return.

"While there must be nothing in the conduct of the trial judge toward the jury savoring of undue pressure or coercion to reach a verdict, when the jury return into court and announce their failure to agree, the court may impress upon them the importance of agreeing, urge them to listen to argument and sacrifice the pride of personal opinion, and he may send them back for further deliberation until such time as it becomes apparent that hope of an agreement is futile." *Id.* at 149-50.

An example of the other side of the coin will be found in *Lively v. Sexton*, 35 Ill. App. 417 (1890), where the court brought the jury, at the time standing 11 to 1, into the court room and said:

"Gentlemen, you will retire and further consider this case and I will say if there is a mistrial in this case I shall inquire into it, and if I find that any juror has stubbornly refused to do his duty or wilfully tried to bring about a disagreement so as to interfere with the administration of justice, I will send him to jail for contempt of court." *Id.* at 419.

It is entirely clear in the case at bar that Judge Mathias chose his words with great care. A comparison of his charge with the charge in *Orthopedic Equipment Co., supra,* shows they are virtually the same and that both are studiously in accord with the language of the Supreme Court in *Allen.*

*Judgment affirmed.*
*Costs to be paid by appellant.*