JOHN FRANCIS FLETCHER, a/k/a LOUIS
BERNARD STEWART, BENJAMIN IGNA-
TIUS NICHOLS, AND GEORGE ARTHUR
HAMILTON *v.* STATE OF MARYLAND

[No. 58, September Term, 1969.]

*Decided November 19, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*James C. Chapin* for appellant Hamilton, *Hugh L.
Reilly* for appellant Fletcher, and *Bruce R. Harrison* (on
brief) for appellant Nichols.

*Donald Needle, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Arthur A.
Marshall, State's Attorney for Prince George's County,*
and *Joseph J. Bonner, Assistant State's Attorney for
Prince George's County,* on the brief, for appellee.

154

MORTON, J., delivered the opinion of the Court.

The appellants, John Francis Fletcher, Benjamin Ignatius Nichols and George Arthur Hamilton, were convicted of grand larceny in a joint trial by a jury in the Circuit Court for Prince George's County.

It is contended, *inter alia,* that the presiding judge abused his discretion by "giving, *sua sponte,* the 'Allen charge' after only fifty-five minutes of jury deliberation." *

From the record before us, it would appear that upon completion of the testimony, the judge gave his advisory instructions on the law to the jury and respective counsel then presented oral arguments. The jury, thereafter, began its deliberations at 3:45 p.m. At 4:50 p.m. the same day, the judge, on his own motion, according to appellants, interrupted the jury's deliberations and recalled the members to the courtroom. In open court and, presumably, with all appellants and counsel present, he then gave the following supplemental instructions to the jury:

> "THE COURT: Mr. Foreman, Members of the jury, the Court observes that you have had this case under consideration now for about an hour and a half. We do not feel that there is anything technical to be decided here. It's a question of arriving at a judgment. For that reason we instruct you that there are many cases in which absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror as a result of his own convictions and not a mere acquiescence in the conclusions of his fellows, each one of you should examine the questions submitted with candor and with a proper regard and deference to the opinion of the others.
> "It is your duty to decide this case if you

---

* The record discloses that the jury deliberated sixty-five minutes.

can conscientiously do so, and you should listen with a disposition to be convinced to each other's arguments. If your views are contrary to those of the vast majority, you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct.

"So you will return to the jury room and deliberate further in light of these instructions."

This type of instruction is generally referred to as the "Allen charge" and derives the appellation from the decision of the Supreme Court of the United States in *Allen v. United States*, (1896) 164 U. S. 492, wherein the giving of such a charge by the trial judge in that case was approved. The use of this type of instruction has been upheld by a substantial number of State and Federal courts throughout the country where it is apparent that the jury in a criminal case is encountering difficulty in reaching a verdict. Whether there should be a resort to this charge and the circumstances under which it should be given is a matter generally considered to be within the sound discretion of the presiding judge. Annotation: Dissenting Jurors—Instructions, 100 A.L.R.2d 177. The ultimate test, however, is whether the wording of the charge and the time, circumstances and conditions under which it is given would threaten or tend to coerce the jury into reaching a verdict which is contrary to any individual juror's free will and judgment. Otherwise stated, whether the giving of the instruction constitutes reversible error in a given case depends not only upon the language used but upon the conditions and attendant circumstances under which the instruction is given. The question to be determined is whether resort to the instruction forced or helped to force an agreement which would not otherwise have been reached except for the intimidating or coercive effect of the charge upon some jurors or whether it merely initiated a new train of real deliberation which ended the disagreement and enabled

each juror conscientiously and freely to subscribe to the unanimous verdict.

Although some courts have held that the charge may be incorporated in the original instruction to the jury,[1] its use in this State, so far as we are aware, has been substantially confined to those occasions where the court is either informed by the jury that it is deadlocked and unable to reach unanimous agreement or where it becomes apparent that the jury is having difficulty in reaching a verdict by the excessive length of time consumed in its deliberations.[2] The use of the "Allen charge," in both civil and criminal causes, has been approved by our Court of Appeals in *Leupen v. Lackey,* 248 Md. 19, with the following admonition (p. 25) :

> "It must not be supposed that an Allen charge is proper in every case. There well may be facts and circumstances in a given case which would make such a charge either inadvisable or require the trial judge to exercise great care and restraint in presenting it to the jury."

The use of the charge has been roundly condemned by some courts. For example, in *Green v. United States,* 309 F. 2d 852 (5th Cir. 1962), Judge Wisdom, in speaking for the Court, termed it the "dynamite charge" since it "is designed to blast loose a deadlocked jury" and found that "[t]here is small, if any, justification for its use." In Colorado it is called the "third degree instruction," *Leech v. People,* 146 P. 2d 346; in New Mexico, the "shotgun instruction," *State v. Nelson,* 321 P. 2d 202. It has also been referred to as the "nitroglycerin charge." *Huffman v. United States,* 297 F. 2d 754, dissenting opinion by Brown, J. The Supreme Court of Arizona has abolished its use altogether, *State v. Thomas,* 342 P. 2d 197;

1. See 100 A.L.R.2d 213.
2. In approving the Allen charge in *Orthopedic Equipment Co. v. Eutsler,* 276 F. 2d (4th Cir. 1960), Chief Judge Sobeloff stated: "As a practical matter, the charges is customarily given only when the jury appears to have encountered difficulties in reaching unanimity."

as has the United States Circuit Court of Appeals for the Third Circuit, *United States v. Fioravanti,* 412 F. 2d 407 (1969).

Against this background, we have carefully examined, initially, the wording of the charge given by the presiding judge in the case at bar. With the exception of the statements: "We do not feel there is anything technical to be decided here. It's a question of arriving at a judgment." — we can find no fault with the language employed since it is identical to the language approved by the Court of Appeals in *Leupen v. Lackey, supra.* We are concerned, however, with the coercive effect it may have had upon the jury in the circumstances and conditions under which it was given.

This Court had occasion to review the propriety of using the Allen charge in *Stewart v. State,* 4 Md. App. 565. There, the jury began its deliberations at 4:25 p.m.; sent a note to the presiding judge at 6:32 p.m. with a request to hear additional testimony, which request was denied; advised the court at 7:00 p.m. it could not reach a verdict; sandwiches were then sent in and it continued to deliberate until 10:37 p.m. at which time the court gave the Allen charge. In these circumstances, we found no abuse of the court's discretion in giving the charge.

Again, in *Plumley v. State,* 4 Md. App. 671, we approved the use of the Allen charge where it appeared that after a four-day trial and deliberation by the jury for some seven hours, the court returned the jury to the courtroom, inquired whether the jury was making any progress toward reaching a verdict, and upon being advised: "We can report progress." the Allen charge was given. Considering the length of the trial and the length of time the jury had been deliberating we found that resort to the charge was not improper. We felt compelled, however, to repeat in full the language found in 1 Branson's, *Instructions to Juries* (Third Ed. A. Reid 1960 Repl.) pp. 149-150, which had previously been set forth in *Leupen v. Lackey, supra.* Without thrice repeat-

ing the statement, we once again call attention to Branson's original premise:

> "The trial judge may advise *an unagreed jury* of the importance of their reaching a verdict, if they can do so without surrendering their conscientious convictions." (Emphasis added)

In the case at bar, so far as appears from the record, no communication from the jury was received by the judge indicating any disagreement or difficulty in reaching a verdict or that they did not understand the instructions already given. In fact, no communication of any kind had been received from the jury at the time the judge, on his own initiative, decided to interrupt their deliberations to give the Allen charge. Nor had counsel for either the State or the appellants made any request for supplementary instructions. The single fact that the jury had been deliberating for an hour and five minutes would, in our opinion, not justify, in the absence of other compelling factors, the interruption of their deliberations, returning them to the courtroom and giving the Allen charge. We note that the case was not entirely uncomplicated since it involved three separate defendants in a joint trial, each represented by separate attorneys, and involved a bank robbery in the District of Columbia from which the jury was to determine the appellant's guilt, in the State of Maryland, of grand larceny, under the doctrine of asportation, or receiving stolen goods. Moreover, the presiding judge deemed it necessary to re-instruct the jury, at the conclusion of counsels' arguments to the jury, as to the possible verdicts to be returned. Under these circumstances, we cannot say that there was no coercive or compelling influence upon the jury when the trial judge stated to them that:

> "[T]he Court observes that you have had this case under consideration now for about one hour and a half. We do not feel that there is

anything technical to be decided here. It's a question of arriving at a judgment. * * * If your views are contrary to those of the vast majority, you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct." [3]

We are very much aware that trial courts throughout the State and particularly in the metropolitan areas are confronted with a plethora of cases and we commend the dispatch with which trial judges are endeavoring to bring the heavy case load to a just conclusion. On the other hand, there can never be any justification for a trial judge to use the awesome position he ordinarily occupies in the mind of the average juror to coerce or encourage jurors into cutting off or restricting their deliberations in the interest of shortening the length of a trial. As stated in *Green v. United States, supra,* at p. 854:

"The jury system rests in good part on the assumption that the jurors should deliberate patiently and long, if necessary, and arrive at a verdict — if, but only if, they can do so conscientiously. It is improper for the court to interfere with the jury by pressuring a minority of the jurors to sacrifice their conscientious scruples for the sake of reaching agreement."

While we are aware that there may be conditions, circumstances and occasions when resort to the use of the Allen charge by a trial judge may be justified, we are also convinced that it should be resorted to with care, restraint and circumspection. Here we think that the use of the charge was clearly premature and we cannot say that its use was unprejudicial.

The record indicates that only one appellant regis-

---

3. This latter statement, as we noted in *Plumley v. State, supra,* has been criticized on the basis that it provides too great a possibility of a minority of the jury being coerced by the court to abandon its views in favor of that held by the majority.

tered an objection below to the giving of the charge. Since we are of the opinion that the instruction constituted plain error, material to the rights of all appellants, Md. Rule 756 g, the judgment of conviction as to each appellant will be reversed and a new trial awarded.

In view of our conclusion, we do not reach the other contentions raised in these appeals. We point out, however, that the State, in a larceny case, has the burden of proving ownership. Evidence certainly must be available to enable the State to establish proof of ownership with a greater degree of clarity than appears from the record before us. See *Paesch v. State,* 2 Md. App. 746.

*Judgments reversed and cases*
*remanded for new trials.*