### JORDAN ET AL. *v.* YANKEY

[No. 205, September Term, 1970.]

*Decided January 4, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

Submitted by *Victor L. Crawford* and *Crawford & Goldberg* for appellants.

Submitted by *James W. Hane* and *H. Warren Buckler* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Ivan Jordan, suspecting he was being cuckolded by Yankey, went to Damascus with "live coals in his heart." [1] There he found Yankey and, with an assist from his son Wayne, beat him cruelly. Yankey filed suit forthwith. The Jordans tell us that Yankey's judgment against them ($6,000) should be set at naught. Although the juicier details of the affair have been omitted from the record, the facts, as we now relate them, are virtually undisputed.

Precisely when Yankey became enamored of Rosemary Jordan is uncertain, but that it was prior to 26 July 1969 is clear. It seems that in the evening of that day they met at the home of Floyd Ratliff in Damascus, which is about ten miles north of their Gaithersburg residences. "In the small hours of the morning of Sunday 27 July"

---

1. H. L. Mencken, *A New Dictionary of Quotations* 246 (8th printing 1966), *quoting* Thomas Fuller, *Gnomologia* (1732).

Ivan and Wayne broke into Ratliff's house. They found Rosemary in the bedroom. Yankey was not in sight but shortly thereafter Wayne found him in the bedroom closet. He dragged him out and called his father. Ivan came into the bedroom and together they set upon Yankey. They kicked him in the right eye, they broke his nose, they fractured his cheek bone and they knocked out one of his teeth. What happened to Rosemary was not revealed.

The case came on for trial in the Circuit Court for Montgomery County before Moore, J., and a jury, on 7 January 1970. The evidence established, among other things, that Yankey suffered about a 30 per cent impairment of his right eye, that he lost time from his job, and that he incurred substantial medical expense. Judge Moore refused to direct a verdict for the Jordans both at the close of the plaintiff's case and again at the close of the whole case. Instead he directed a verdict for Yankey against Ivan on the issue of liability. He then submitted the case to the jury with what we shall assume were adequate and appropriate instructions, since no exceptions were noted by either party. Late in the afternoon the jury returned to the courtroom and announced that they had "agreed upon a verdict." What follows is an excerpt from the partial transcript of the proceedings:

"THE CLERK: Whom do you find for, the plaintiff Floyd Yankey or defendant Wayne Jordan?

"THE FOREMAN: For the plaintiff.

"THE CLERK: For what amount do you find in compensatory damages?

"THE FOREMAN: *Whatever the fixed amount;* five thousand was the amount we arrived at.

"THE CLERK: Five thousand?

"THE FOREMAN: Yes; for punitive *and I presume compensatory.*

"THE COURT: You did not make a separate award?

"THE FOREMAN: No, we did not. *We were under the impression that the compensatory were fixed.*

\* \* \*

"(A bench conference was had, as follows:)

"THE COURT: There should technically be a separate amount for damages as to each.

"MR. CRAWFORD [Counsel for the Jordans]: I would say at this time, Your Honor, I think the verdict is improper and I would move for a mistrial."

\* \* \*

"THE COURT: The motion is denied. We will, however, instruct the members of the jury to return and to make a separate award."

\* \* \*

"MR. CRAWFORD: Does the Court rule that the verdict should be against both?

"THE COURT: Yes.

"MR. CRAWFORD: I would object, for the record, to that ruling."

\* \* \*

"(Proceedings in open court were then resumed.)

"THE COURT: Mr. Foreman and ladies and gentlemen of the jury: we perhaps did not make it clear to you that there are to be separate verdicts, one for compensatory and one for punitive \* \* \* damages.

"\* \* \* [R]eturn to the jury room and make a determination \* \* \* that would be (a) compensatory damages \* \* \*; and (b) exemplary damages \* \* \*."

\* \* \*

[The jury returned at 5:15 P.M.]

"THE COURT: Mr. Foreman and ladies and gentlemen of the jury: the Court has earlier directed a verdict for the plaintiff Mr. Yankey,

against * * * Mr. Ivan Jordan. We now direct the clerk to take your verdict in accordance with the Court's direction.

"THE CLERK: Ladies and gentlemen of the jury, have you agreed upon a verdict?"

* * *

"Whom do you find for, the plaintiff Floyd Yankey or the defendant Wayne Jordan?

"THE FOREMAN: Plaintiff."

* * *

"THE CLERK: Do you find compensatory damages?

"THE FOREMAN: We do.

"THE CLERK: In what amount?

"THE FOREMAN: One thousand dollars.

"THE CLERK: Do you find punitive damages?

"THE FOREMAN: We do.

"THE CLERK: In what amount?

"THE FOREMAN: Five thousand dollars."

* * *

"Ladies and gentlemen of the jury, harken to your verdict as it stands recorded. Your foreman sayeth that you find for the plaintiff, Floyd Yankey, upon the issue joined, in the amount of one thousand dollars compensatory damages and five thousand dollars punitive damages; and so you all say?"

* * *

"MR. PALAMARA [Mr. Crawford's associate] : Your Honor, may the jury be polled?

"THE COURT: Yes.

"(The members of the jury were asked individually if their verdicts were the same as the foreman's verdict, and each responded that it was.)" (Emphasis added.)

The Jordans' motion for a new trial was heard by Judge Moore on 3 April 1970. On 18 May he signed an order denying the motion, which order was filed on 20 May along with an opinion setting forth his reasons for

so doing. Judgments were entered on the same day, one for $1,000, the other for $5,000. On 8 June the Jordans appealed "from the Opinion and Order of the Circuit Court for Montgomery County dated May 18, 1970 and the *jury verdict entered thereon.*" In the absence of comment or objection by Yankey we shall assume the Jordans intended their appeal to be from "[the judgment] entered thereon" rather than the *"jury verdict* entered thereon." (Emphases added.)

The first of the Jordans' two contentions is that Judge Moore erred when he failed, in his supplemental instruction, to limit the jury's award of compensatory and punitive damages to a total of $5,000. They argue that "it was implicit in the foreman's statement that the total dollar value of the plaintiff's award was not to exceed $5,000." They overlook the clear meaning of the foreman's answer that the amount of the compensatory damages was "the fixed amount." He added that they (the jury) "were under the impression that the compensatory [damages] were fixed." While the record is of no help to us in this regard we think it fair to assume that the evidence in respect of compensatory damages fully supports a figure of $1,000. Obviously the jury did not *increase* the verdict from $5,000 to $6,000. They simply restated it in terms of total dollars rather than $5,000 plus "the fixed amount." In any event, the argument must be rejected because there can be no doubt that it was within the power of Judge Moore to re-instruct the jury. *Leupen v. Lackey,* 248 Md. 19 (1967). No exception was noted and the suggestion that it (the supplemental instruction) "was highly prejudicial to the" Jordans is groundless. Nor is there any doubt that, in these circumstances, a jury may vary its verdict at any time before the verdict is recorded. *Ager v. Baltimore Transit Company,* 213 Md. 414, 419 (1957).

Disposition of the Jordans' second contention, like the "short horse [that] is soone currid," [2] requires little time and less effort. They assign error because Judge Moore did not instruct the jury to apportion the damages be-

2. John Heywood, *Proverbes,* Part I, Chap. X.

tween Ivan and Wayne. It does not appear that an instruction to that effect was sought by either of them nor is there anything to show that they excepted to the instructions that were given. They were sued as joint tortfeasors; the plea filed on their behalf states that *"they* did not commit the wrongs alleged," that *they* "were not guilty," that *"they* acted with justification and with self defense," and that Yankey first assaulted them. (Emphases added.) And, we might add, the drubbing they gave Yankey is surely a textbook example of a joint tort.

> *Judgment affirmed.*
> *Costs to be paid by the appellants.*