## CLINTON EUGENE COLLINS v. STATE OF MARYLAND

[No. 531, September Term, 1971.]

*Decided March 9, 1972.*

The cause was argued before ORTH, MOYLAN and GILBERT, JJ.

*Stephen A. Tarrant,* with whom was *Henry C. Engel, Jr.,* on the brief, for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with

whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* and *Donald G. Smith, Assistant State's Attorney for Harford County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Clinton Eugene Collins, appellant, was convicted of murder in the second degree in a jury trial presided over by Judge Albert P. Close. Appellant was sentenced to a term of 30 years incarceration under the jurisdiction of the Department of Correctional Services.

On appeal to this Court, appellant asserts that:

1. The trial judge should have granted a motion for a mistrial based on a statement of a prospective juror in the presence of the other members of the prospective jury that the prospective juror was prejudiced against the appellant.

2. The trial court should have appointed a psychiatrist to be present in the court in order to observe certain State's witnesses and to testify as to his assessment of those witnesses in regard to their stability and mental state.

3. The trial judge erred in admitting an incriminating statement attributed to the appellant by a State trooper.

4. A mistrial should have been granted because two State's witnesses spoke to each other concerning the testimony of one of them in the court, notwithstanding the court's instructions that the witnesses were not to communicate.

Miss Mary Lee Stokes testified that on the morning of February 20, 1971, appellant and one Robert S. Townsend went to the residence of Miss Pearl Lee Alston and were admitted to the house. Townsend went into the kitchen to see Miss Alston and appellant exited from the house and then promptly returned wielding a shotgun. Appellant stood in the doorway of the house holding the door open with his foot and shot to death Johnnie Sand-

ers. Three or four shots were fired into Sanders' body. A pathologist testifying for the State concluded that Sanders' death was caused by the gunshot wounds. Miss Alston and Mr. Townsend both saw the appellant armed with the shotgun, standing in the doorway to the Alston residence. Miss Alston, who was in the kitchen when the first shot was fired, ran into the living room and pleaded with the appellant not to shoot any more. The appellant pushed her back against the stove while he was reloading. When the second shot was fired she was in the bedroom. Townsend, who had been in the kitchen with Miss Alston, attempted to grab the weapon from the appellant after the first shot, but failed and was pushed off the porch. By the time the third shot was fired, Miss Alston was on her way for help. Appellant then fled.

An alert was broadcast to the State police and Trooper Caudill shortly afterwards observed the vehicle of the appellant and apprehended him. Appellant was wearing clothing identical to that set forth in the police broadcast. The shotgun was recovered approximately six weeks after the slaying from a telephone company employee who had found the gun in a creek. The shotgun shells discovered at the scene of the crime had been fired from the gun found in the creek. Swabbings taken of the appellant's hands were analyzed and traces of gunpowder were found.

Appellant's defense was that when he arrived at the Alston residence, Miss Stokes was standing over the body of the decedent with a gun in her hand. Appellant knocked the gun from the hand of Miss Stokes and the weapon fell to the floor. He denied having shot Sanders and stated that Miss Stokes had admitted to him that she shot Sanders and that he would "take the rap" for her because she was the mother of his child. Appellant agreed he would "carry the weight" for Miss Stokes, although he expected her to testify at the trial that she had actually killed Sanders in self defense. Miss Stokes admitted that Sanders carried a revolver with him most of the time. The appellant also called as a witness Marvin

E. McClain, who related to the jury that he "ran into" the appellant in Aberdeen some time in February of 1971, although he did not remember the exact date or the day of the week. All he knew was that it was in the morning and that both he and the appellant were drinking. McClain said they were driving on a dirt road and both of them got out of the car and the appellant knocked on the door of a house. McClain told the jury that he saw a lady with a rifle in her hand. Appellant knocked the rifle from the hand of the woman. He, McClain, did not see or hear any shots fired, although he saw the woman standing over a man lying on the floor.

I

At the time the prospective jurors were being examined, one of them, Mr. Clark, stated in the presence of the others that he knew the appellant "as a former student * * * about twelve or thirteen years ago." Judge Close inquired of the juror, "Would these facts about the people that you know in any way prevent you from making a fair and impartial verdict?"

THE JUROR: "I'm afraid so, Your Honor. I am prejudiced against the Defendant, I believe, because of incidents that have gone on—."

Judge Close stopped Mr. Clark from further comment and denied the appellant's motion for a mistrial. The Judge then made the following remarks to the prospective jury:

"Now, Ladies and Gentlemen, I have a couple of more questions. First of all, do any of you know the Defendant, Clinton Collins.

"Secondly, based on the statement made by Mr. Clark who was just excused in which he

678

mentioned that he was prejudiced against the Defendant, are any of you in any way affected by that statement in such a manner that you could not render a fair and impartial verdict in this case?

"The Court simply in commenting on that will state that it's accepted that as a matter of his prejudice on something in connection with this man in the past and that should give no one any right to be prejudiced with regard to him in the light of the testimony that you will hear throughout this trial. That is his view with regard to some past action of this Defendant."

The purpose of a *voir dire* examination is to ascertain the existence of any cause for disqualification of the juror. *Giles v. State,* 229 Md. 370 (1962) ; *Borman v. State,* 1 Md. App. 276 (1967) ; *Carder v. State,* 5 Md. App. 531, 537 (1968). Mr. Clark's candid disclosure of his prejudice prevented a biased juror from being seated in the jury box.

The determination of whether or not to grant a mistrial lies within the sound discretion of the trial court. *Gerstein v. State,* 10 Md. App. 322, 329 (1970) ; *Parker v. State,* 7 Md. App. 167 (1969) ; *Carroll v. State,* 3 Md. App. 50 (1968). We observe no abuse of that discretion here, particularly in view of Judge Close's subsequent question and instructions to the jury. *Gerstein v. State, supra.*

## II

We think the appellant's second contention relative to a psychiatrist who would have testified as to the psychiatrist's observations of the witnesses' stability and

general mental state is devoid of merit. What the appellant really sought to do was to create a "super-jury" in the form of a psychiatrist and have that psychiatrist present to the jury the psychiatrist's view of the witnesses' credibility. The weight of the evidence and the credibility of witnesses are matters within the realm of the jury. Rule 1086.

In *Gaither v. State,* 13 Md. App. 245 (1971), this Court said that the majority of jurisdictions, including Maryland, have held that the supplying of expert pretrial services to indigent defendants in criminal cases at public expense is a matter within the sound discretion of the trial court. We further said that such services are to be made available to indigents only when it is shown that these services "are necessary to afford the accused an opportunity to fairly present his defense." We did not say in *Gaither,* nor did we imply, that an indigent defendant, or any other defendant, is entitled to a psychiatrist to testify as to the mental stability *vel non* of State's witnesses. See Annotation in 20 A.L.R.3d 684; *State v. Vincent,* 450 P. 2d 996 (Hawaii 1969). We think Judge Close properly denied appellant's motion to employ a psychiatrist for the purpose of screening witnesses.

## III

At the time that Trooper Caudill stopped the appellant's vehicle, the appellant alighted therefrom and walked toward the trooper with his hands over his head, saying, "You've got me." After searching the appellant, the trooper read to him the warnings required by *Miranda v. Arizona,* 384 U. S. 436 (1966), and then asked the appellant if he understood those warnings. The trooper testified that the appellant replied that "he didn't know." Whereupon, the trooper asked where the gun was and the appellant replied that he was not going to say anything and "besides that, it was self-defense anyway." Appellant, at a suppression hearing, denied being advised of his *Miranda* rights or making any comment whatsoever to the trooper.

It is patent that Trooper Caudill should not have per-. sisted in questioning the appellant after the appellant told the trooper that he was not sure whether or not he understood the *Miranda* warnings. The trooper should have first ascertained that the appellant did fully understand his rights, and knowingly and intelligently waived them before the trooper persisted in his interrogation of appellant. The admission into evidence of the trooper's testimony, over objection, was error. However, we think, under the totality of the evidence presented by the State, which clearly and overwhelmingly demonstrated the appellant's guilt of the offense charged, that the error was harmless. *Harrington v. California,* 395 U. S. 250; *Chapman v. United States,* 386 U. S. 18 (1967) ; *Guyette v. State,* 438 P. 2d 244 (Nevada 1968) ; *People v. Dahlke,* 257 Cal. App. 2d 82, 64 Cal. Reptr. 599 (1967).

## IV

Lastly, appellant argues that his motion for a mistrial should have been granted because two State's witnesses allegedly spoke to each other concerning the testimony of one of the two witnesses at the trial, notwithstanding Judge Close's instructions that the witnesses not do so.

Miss Stokes testified that she had spoken to Miss Alston after Miss Alston had concluded her testimony. A motion for a mistrial was made and a hearing was held out of the presence of the jury, wherein Miss Alston stated that she did not talk to Miss Stokes about the case. Miss Stokes recanted and stated that no such conversation occurred. At the conclusion of the hearing Judge Close found as a fact that the conversation did not happen and so instructed the jury.

We cannot say that the judge's finding was clearly erroneous, nor can we find that his refusal to grant a mistrial was an abuse of judicial discretion. The question of whether or not to grant a mistrial is vested within the sound discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse.

*Chandler v. State,* 7 Md. App. 646 (1969) ; *Holbrook v. State,* 6 Md. App. 265 (1969).

Under the circumstances here present, Judge Close properly denied the appellant's motion for a mistrial.

*Judgment affirmed.*