# HEWITT ROBERT PINDER, JR. *v.*
# STATE OF MARYLAND

[Nos. 735 and 1128, September Term, 1975.]

*Decided April 12, 1976.*

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*John W. Sause, Jr., District Public Defender,* with whom was *Alan H. Murrell, Public Defender* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *Sidney S. Campen, Jr., State's Attorney for Talbot County* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Hewitt Robert Pinder, Jr., appeals from judgments of conviction of rape and burglary after a jury trial in the Circuit Court for Talbot County (Clark, J. presiding); and, in a separate appeal, he challenges the denial by the trial court of his motion for a new trial based upon the confession of a third party some thirty days after he was sentenced to consecutive terms of 20 years and 10 years.[1]

Finding fatal error in the *Allen* [2] charge given by the trial court after deliberations commenced, we reverse the judgments of conviction and remand for a new trial. The appeal from the denial of appellant's motion for a new trial is perforce dismissed as moot.

---

1. Appellant was also ordered to be transferred to Patuxent Institution for a determination of defective delinquency pursuant to Code, Art. 31B. His appeal from his conviction, Case No. 735, and from the denial of his motion for a new trial, Case No. 1128, September Term 1975, were consolidated for argument by Order of Chief Judge Orth dated December 24, 1975.

2. The familiar name is taken from Allen v. United States, 164 U. S. 492 (1896), in which the Court approved the use of an instruction designed to cause a divided jury to conciliate their differences and to reach unanimity. As the Court of Appeals pointed out in Kelly v. State, 270 Md. 139, 310 A. 2d 538 (1973), n.1, trial courts over the years have employed variations of the language approved in *Allen* and these are referred to as "Allen-type" instructions.

I

The unfortunate victim of a rape which occurred on September 26, 1974, in the bathroom of a small private home located four miles east of Easton, was 18 years of age, married and five months pregnant. The day following the attack, she assisted the police in the preparation of a composite drawing of her assailant. Appellant, 19 years of age was picked up on September 29, 1974 by State Trooper Little on Route 309 near Easton where he was hitchhiking. As the trooper later testified,[3] "We both agreed he looked like the composite." Appellant consented to being photographed and was then driven by Trooper Little to the home in Queen Anne where he lived with his parents and siblings.[4] The following day, the victim visited the police barracks at Easton to make a change in the composite drawing. For that purpose, State Trooper Lewis accumulated several photographs. He gave her a card with which to cover the pictures in order to examine them in sections. Included among the pictures was a Polaroid snapshot of appellant which had been taken the day before by Trooper Little. Lewis testified that "[w]hen this [appellant's] picture came to her she immediately stepped right back and she said 'That's him', and she broke down at that point." Appellant was arrested at midday on September 30, 1974 at his place of employment. On October 3, 1974, the victim quickly identified him in a lineup conducted at the Dorchester County Jail in Cambridge under the direction of Sheriff James Ira Johnson.[5]

At the trial, appellant's counsel conceded the *corpus delicti* of rape and burglary but disputed appellant's criminal agency, vigorously challenging the victim's iden-

---

3. A pretrial hearing on appellant's motion to suppress identification of him by the victim was held before Judge Clark and Judge Thomas Hunter Lowe of this Court, specially assigned, on July 20, 1975. Trooper Little testified at the hearing as well as at the subsequent trial. The motion was denied.

4. At the trial, Trooper Little testified that appellant "asked me to meet his mother and father and explain where he had been."

5. Sheriff Johnson testified that he had established facilities at the jail for conducting lineups for the FBI, the Cambridge City Police, numerous Sheriff's Departments and for the Chief of Police in Easton.

tification. Alibi testimony was also presented. Appellant did not take the stand. (At disposition, on April 16, 1975, after a presentence investigation, it was disclosed that appellant had no prior convictions.) The jury returned a verdict of guilty of rape without capital punishment, and of burglary.

Scarcely ten days after the sentencing of appellant, the State's Attorney for Talbot County and the State Police obtained a confession from one Howard Caulk Allen, the subject of an investigation in an unrelated assault, to the crimes for which appellant had been convicted and sentenced. The State's Attorney filed a motion for a new trial on the ground of newly discovered evidence exculpatory of appellant. When the motion came on for hearing on July 23, 1975, the State withdrew it upon the suggestion of the court that the motion was not proper because the State had prevailed at the trial. The court then permitted appellant to change a pending petition for post conviction relief to a "motion under the authority of Maryland Rule 764(b)(3) for a new trial on grounds of newly discovered evidence."

For the purposes of this opinion, it is sufficient to add that, after taking testimony and upon careful consideration of the motion, Judge Clark denied it on December 9, 1975 in a five-page opinion. His ultimate conclusion was, "While Allen's confession was given freely and voluntarily and all constitutional safeguards were carefully observed in its obtention, it is simply incredible and the product of Allen's bizarre, sexual fantasies. . . ." As previously indicated, we find it unnecessary to consider the merits of the appeal from the denial of the motion for a new trial.

## II

The trial was concluded on the second day. The jury retired at 2:54 p.m., taking with them the exhibits in the case and a typewritten copy of Judge Clark's oral instructions. The transcript reveals that shortly before 6:00 p.m. the jury sent a message to the court that they could not agree. At 5:58 p.m. the court reassembled the jury in the

jury box and delivered the following supplemental instruction:

The Court: "Mr. Foreman and ladies and gentlemen of the jury, the Court has been advised that you are unable to agree. *For many reasons which I would think would be self evident to you the Court would like to avoid a retrial of this case* so, with the concurrence of counsel for both the State and defense, I am going to read you what is commonly referred to as the Allen Charge, *which has been of assistance to juries in the same situation you now find yourself.*

*"The Supreme Court says this.* 'In a large proportion of cases absolute certainty can not be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of his fellows, you should examine the question submitted with candor and with proper regard and deference to the opinions of each other. It is your duty to reach a verdict in this case if you can conscientiously do so, and you should listen with a disposition to be convinced to each other's arguments. If much the larger number of you are for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression on the minds of so many men equally honest and equally independent [intelligent] with himself. If, upon the other hand, the majority are for acquittal, the minority should ask themselves whether you might not reasonably take [doubt] the correctness of a judgment that was not concurred in by the majority. While undoubtedly the verdict of a jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by comparison of views and by arguments among the jurors themselves. It certainly can not be the law that

each juror shouldn't listen with deference to the arguments of your fellow jurors and with a distrust of his own judgment, if he finds that a large majority of the jury is taking a different view of the case from what he does himself. It can not be that each juror should go to the jury room with a blind determination that the verdict should represent his opinion of the case [at that moment], or that he should close his ears to the arguments of those who are as honest and intelligent as himself.'

"Now ladies and gentlemen of the jury, *I shall give this to the Clerk to give to you and take back with you and cogitate upon,* but what I would like to know now is would you like me to make some arrangements to have some supper sent in?" (Emphasis added.)

At 6:05 the jury resumed its deliberations and at 7:38 returned the aforementioned guilty verdicts.

The language of the supplemental charge is practically identical to that approved by the Supreme Court in *Allen v. United States,* 164 U. S. 492, 501 (1896).[6] In Maryland, however, the *Allen* case is no longer the standard against which supplemental instructions to an apparently deadlocked jury are to be measured. The leading case in this jurisdiction is *Kelly v. State, supra,* affirming 16 Md. App. 533, 298 A. 2d 470 (1973). There the Court of Appeals, in an opinion by Judge Digges, held that an *Allen*-type charge had been properly given as part of the trial court's general instructions *before* the jury began its deliberations.

In the face of prior approval of an *Allen*-type charge in a *civil* case, *Leupen v. Lackey,* 248 Md. 19, 234 A. 2d 573 (1967), the appellant in *Kelly* urged that the guidelines for supplemental instructions contained in the American Bar Association's Standards Relating to Trial by Jury, § 5.4 (1968) should be approved and that *any* deviation from such

6. The bracketed words in the supplementary charge, above quoted, appear in the Allen case but were not employed by the trial judge.

Standards by the trial court should be held to constitute reversible error.[7]

While approving the application of the ABA Standards, the Court of Appeals in *Kelly* was "not convinced of the need to imprison the trial judges of the State within the walls of foreordained verbiage." 270 Md. at 142.[8] Guidelines for the employment of an *Allen*-type charge were, however, suggested by the court at 143-44, *viz:*

(a) *Before* deliberations, the following ABA approved charge is "always proper":

"The verdict must represent the considered judgment of *each* juror. In order to return a verdict, it is necessary that *each* juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. *Each of you must decide the case for yourself,* but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But *do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.*

"You are not partisans. You are judges — judges of the facts. [In criminal cases substitute the following: Since this is a crim-

---

7. The Standards had not been precisely followed by Judge Solomon Liss, the trial judge, in his general charge.

8. The use of the ABA Standards comports with the current trend in other jurisdictions. *See, e.g.,* United States v. Brown, 411 F. 2d 930 (7th Cir. 1969); Kersey v. State, 525 S.W.2d 139 (Tenn. 1975); State v. Blake, 305 A. 2d 300 (N.H. 1973); State v. White, 285 A. 2d 832 (Me. 1972); People v. Prim, 289 N.E.2d 601 (Ill. 1972); Commonwealth v. Spencer, 275 A. 2d 299 (Pa. 1971); and Fields v. State, 487 P. 2d 831 (Alaska 1971).

inal case, you are judges — judges of both the law and the facts.] Your sole interest is to ascertain the truth from the evidence in the case." (Emphasis added.) [9]

(b) If the *Allen*-type instruction is given *before* the jury retires and the trial judge chooses to "personalize" the instructions, he has greater latitude in doing so.

(c) *After* the jury commences deliberations the trial judge "should closely adhere to the wording of the ABA recommended instruction."

(d) If, in the latter case, the trial court does not "adhere closely" to the ABA approved language then, on appeal

1) the language employed "will be subjected to a careful scrutiny" to determine whether the province of the jury has been invaded and the verdict unduly coerced; and

2) the time interval from the onset of the deliberation, taking into account the complexity of the case, will be considered in examining whether there was an abuse of discretion in giving the instruction "at the time selected by the trial judge."

In the instant appeal there was no abuse of discretion in the *timing* of the instruction. The jury had been deliberating for three hours and had itself informed the court that a verdict was not possible. On the other hand, the content of the supplemental instruction poses a grave question as to "whether the province of a jury has been invaded and the verdict unduly coerced." There was no adherence whatever to the ABA recommended language

---

**9.** The court approved the giving of this instruction to the entire *venire* when it first reports for jury duty.

approved in *Kelly* in 1973. Rather, the language employed was that approved in *Allen* in 1896.[10] In addition, the trial court introduced elements not even found in *Allen*:

   (a) "For many reasons which I would think would be self evident to you, the court would like to avoid a retrial of this case;"

   (b) "I am going to read you what is commonly referred to as the Allen Charge which has been of assistance to juries in the same situation you now find yourself;" and

   (c) The charge was not merely the supplemental instruction of the trial court but was given upon the authority of the Nation's highest Court, in language directly attributable to that Court, enclosed in quotation marks, with a written copy to "cogitate upon." [11]

It is plain, we think, that these were coercive elements and an abuse of discretion. The legitimate desire to spare a rape victim the traumatic reenactment of such a searing episode at another trial and to save the State the time and expense involved in a retrial is understandable—but this should be retained in the bosom of the court and not imparted to a

---

**10.** As Judge Gilbert pointed out for this Court and Judge Digges for the Court of Appeals in *Kelly*, two State Supreme Courts, Montana and Arizona, have rejected the *Allen* charge in any form and three United States Courts of Appeal as well as the Supreme Court of Pennsylvania have announced approval of the charge only as circumscribed by the ABA Standards. In United States v. Fioravanti, 412 F. 2d 407 (3d Cir. 1969), the following assessment of the *Allen* charge was given:

"Since its approval over seventy years ago, the Allen Charge has persisted through the years, not so much an object of commendation as it is a product of toleration. Its continued existence is ostensibly justified as a device to generate verdicts, and thus eliminate hung juries. Laudatory as this rationale may appear on superficial impression, there is, upon serious contemplation, no sound basis to the hypothesis." At 415-416.

**11.** The trial court prefaced the supplemental charge with the words "The Supreme Court says this." In *Allen* the Supreme Court did not actually adopt the precise language of an instruction as did the Court of Appeals, for example, in *Kelly, supra*. It did approve, in apparent paraphrase, the substance of the charge employed in that case by the trial court.

deadlocked jury. Such factors are wholly foreign to the primary responsibility of the jury to determine whether the accused is guilty as charged beyond a reasonable doubt. *See, In Re Winship,* 397 U. S. 358 (1970). Indeed, in our judgment, suggestions to a jury of this nature tend only to subvert the right of an accused under Article 21 of the Declaration of Rights to a trial "by an impartial jury without whose *unanimous consent* he ought not to be found guilty." (Emphasis added.)

Furthermore, it is manifestly the application of constraint to inform a jury which considers itself deadlocked, that other juries "in the same situation" have heeded the additional instructions about to be given. Finally, compulsion inevitably resides in the representation, however inadvertent, that a supplemental charge of the type involved here not only bore the *imprimatur* of the Supreme Court but was indeed the precise language of that tribunal.

As for the content of the charge itself in this case, it is plain that the instruction rendered was not an *"Allen-type"* but rather was *the Allen* charge in its pristine, unpersonalized form. The infirmities of the charge may be seen in the following comparison between its elements and the ABA Standards approved in *Kelly*:

| *Allen Charge* | *ABA Standards* |
|---|---|
| 1) Deference to the opinions of each other. | 1) Jurors should not surrender their convictions because of another's opinion or "for the mere purpose of returning a verdict." |
| 2) Duty to reach a verdict if conscientiously possible. | 2) Duty to consult and deliberate with a view to reaching an agreement if it can be done without violence to individual judgments. |

3) Minority jurors should seriously reevaluate their positions.

3) All jurors are encouraged to reexamine their views whether they be aligned with the majority or the minority.[12]

4) The verdict *should* undoubtedly represent the opinion of each individual juror.

4) The verdict *must* represent the considered judgment of *each* juror.

5) The very object of the jury system is to secure unanimity.

5) The object of the jury system is not to secure unanimity but to require it.[13]

6) A juror should listen with a distrust of his own judgment if a "large majority is taking a different view."

6) An individual juror must maintain his individual judgment and not surrender his honest convictions.

On principle therefore and upon the authority of *Kelly v. State, supra,* we conclude that the traditional *Allen* charge, as distinguished from an *Allen*-type charge conforming to the ABA Standards, should no longer be given in Maryland after the jury has retired; and we hold that its employment here accompanied by the prefatory language of the trial court previously quoted, must be held to constitute coercion and therefore reversible error.

We recognize, of course, that the supplemental instruction as given met with no objection by the defense. However, Maryland Rule 756 (g) permits us to

"take cognizance of and correct any plain error in

---

**12.** "There is an inherent inconsistency in [the trial court's charge] in that the dissenters are urged to reconsider their verdict and simultaneously are reminded to make their decisions based upon their own convictions which they are cautioned not to sacrifice. [The court asked] the dissenters to consider shifting their opinions, because the majority is of a different persuasion. We find no merit to any suggestion that might necessarily makes right." Kersey v. State, *supra,* 525 S.W.2d at 144. *See also,* United States v. Fioravanti, *supra.*

**13.** The opposite proposition assumes an inherently faulty major premise as the Court points out in Fioravanti, *supra,* namely, "that the majority is right and has reached its preliminary inclination by appropriately inspired processes, and that the minority in a given group possesses attributes of spurious rationality. But good reason does not depend upon numbers."

the instructions, material to the rights of the accused even though such error was not objected to as provided by [Rule 756 (f)]."

In *Fletcher v. State,* 8 Md. App. 153, 258 A. 2d 781 (1969), we held that an erroneous *Allen*-type instruction amounted to plain error under Rule 756 (g). Here, as there, we are faced with an irremediable error of commission and shall therefore reverse judgments of conviction and remand for a new trial. *Cf. Robinson v. State,* 20 Md. App. 450, 316 A. 2d 268 (1974); *Taylor v. State,* 17 Md. App. 41, 299 A. 2d 841 (1973); *Brown v. State,* 14 Md. App. 415, 287 A. 2d 62 (1972).

Because of this result the appeal in No. 1128, concerning a motion for a new trial, is dismissed as moot.

We think it appropriate at this time to reemphasize previous admonitions concerning the use of any *Allen*-type charge:

"It must not be supposed that an Allen [type] charge is proper in every case. There well may be facts and circumstances in a given case which would make such a charge either inadvisable or require the trial judge to exercise great care and restraint in presenting it to the jury." *Leupen v. Lackey, supra,* 248 Md. at 25.

"[W]e are also convinced that it should be resorted to with care, restraint and circumspection." *Fletcher, supra,* 8 Md. App. at 159.

"In so sensitive a semantic minefield we commend the periodic rereading of *Kelly* [270 Md. 139, 310 A. 2d 538] by the trial bench [and bar]." *Oliver v. State,* 25 Md. App. 647, 655, 334 A. 2d 572 (1975).

> *Judgments in No. 735 reversed; case remanded for a new trial; appeal No. 1128 dismissed as moot; costs to be paid by Talbot County.*