## WILLIAM PAUL BURNETTE, JR. *v.*
## STATE OF MARYLAND

[No. 515, September Term, 1975.]

*Decided July 23, 1976.*

The cause was argued before MORTON, MELVIN and MASON, JJ.

*E. Allen Shepherd, Assigned Public Defender,* with whom was *Edward P. Camus, District Public Defender,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Leonard L. Casalino, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

The appellant, William Paul Burnette, Jr., was tried by a jury in the Circuit Court for Prince George's County on a thirty-count indictment. He was convicted of kidnapping, assault and battery, and various other crimes for which he received consecutive and concurrent sentences totaling forty years.

Neither the corpus delicti nor the criminal agency of the appellant is in dispute. Both are amply supported by the evidence. At the trial below the appellant pleaded not guilty by reason of insanity. On appeal two issues are raised:

(I) Did the trial court err in denying the appellant's request to ask the jurors a certain voir dire question on the subject of insanity; and

(II) Was the use of the Allen-type charge so coercive and prejudicial as to deny the appellant a fair and impartial trial.

## I.

The appellant requested the court to ask the prospective members of the jury the following question:

> Does any member of the jury panel feel that a person should be punished for a crime if that person committed the crime as a result of a mental disorder?

The appellant contends that the refusal to ask this question denied him the right to question the jurors about their beliefs with regard to the defense of insanity.

In this State the nature and extent of the voir dire examination rests in the sound discretion of the trial judge. *Vernon v. State,* 12 Md. App. 157, 277 A. 2d 635 (1971); *Carder v. State,* 5 Md. App. 531, 248 A. 2d 495 (1968). The purpose of voir dire is to determine whether there is cause for challenge or disqualification of any prospective juror. *Goldstein v. State,* 220 Md. 39, 150 A. 2d 900 (1959); *Collins v. State,* 14 Md. App. 674, 288 A. 2d 221 (1972), *cert. denied,* 409

U. S. 882, 93 S. Ct. 169, 34 L.Ed.2d 137 (1972). Questions which "fish" for information which might be useful in making peremptory challenges may be refused in the discretion of the court. Questions which probe the prospective jurors' knowledge of the law are not proper on voir dire. *Carder v. State, supra.* It is evident that the wording of the requested question was too general and too vague to aid the appellant in determining whether a particular juror had any predisposition concerning the defense of insanity. *Grogg v. State,* 231 Md. 530, 191 A. 2d 435 (1963). It is further evident that the form of the question sought the jurors' knowledge of and attitude toward the law, or, in other words, sought information which might be useful in making peremptory challenges. *See State v. Kelly,* 285 A. 2d 571 (N.J. 1972).

Although the appellant's voir dire question on insanity was denied, the trial court fairly covered this subject in the following instruction to the jury:

> You are further instructed that as part of its burden in a criminal case such as this, where the defense of insanity is raised, the State must, in order to obtain a conviction, prove beyond a reasonable doubt and to a moral certainty that the defendant, at the time of the commission of the alleged criminal acts, was not suffering from a mental disorder which caused him to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

We, therefore, conclude that the trial court did not abuse its discretion in refusing to submit the requested voir dire question to the jurors.

## II.

The jury retired to deliberate at 2:45 p.m. After nearly four hours the court indicated to counsel that it had received a note from the jury which read as follows:

> Judge Mattingly, Your Honor, we are in accord

with the fifteen possible verdicts. We cannot decide on the following issues: sane or insane. . . .

The jurors returned to the jury box and the judge read the following Allen-type charge to them:

Mr. Foreman, ladies and gentlemen of the jury, the Court has reviewed your note from the foreman stating that you are in accord on the fifteen possible verdicts and we cannot decide on the following issues. Sane or insane.

The Court will further instruct you, Mr. Foreman, and ladies and gentlemen of the jury, that it observed that you have been out almost three hours on this case, almost four hours, excuse me, and had it under your consideration for that period of time. We instruct you that there are many cases in which absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror as a result of his own convictions and not a mere acquiescence in the conclusions of his fellows, each of you should examine the question submitted with candor and with a proper regard and deference to the opinion of others.

It is your duty to decide this case if you can conscientiously do so, and you should listen with a disposition to be convinced to each other's arguments. If your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct.

So, now I'm asking you to return to the jury room and deliberate further in light of these instructions.

The jury returned to the jury room and deliberated for another three hours before finding that the appellant was sane and guilty of various offenses charged.

The appellant argues, in effect, that because the jury had already deliberated on the issue of insanity for four hours

and was unable to reach a decision, the giving of the Allen-type charge at that point had a coercive and intimidating effect on the jury. We disagree.

In *Kelly v. State*, 270 Md. 139, 310 A. 2d 538 (1973), the Court of Appeals, through Judge Digges, set out guidelines for the trial bench concerning the propriety and timing of an Allen-type charge. Briefly stated, those guidelines are:

1) that *before* the jury retires, the ABA approved charge[1] is "always proper;"
2) that if the trial judge desires to "personalize" an Allen-type charge given *before* the jury retires he has greater latitude in doing so then than later;
3) that *after* the jury retires the trial court "should closely adhere to the wording of the ABA recommended instruction;" and
4) that in the absence of such adherence a reviewing court will carefully scrutinize the language of the charge to determine whether the jury has been coerced or its province invaded. The appellate court will also consider whether the timing of a nonconforming post-retirement charge amounts to an abuse of discretion.

In *Pinder v. State*, 31 Md. App. 126, 355 A. 2d 489 (1976), we compared the trial court's charge there, taken virtually verbatim from *Allen v. United States*, 164 U. S. 492, 501 (1896), with the ABA charge approved in *Kelly*. Because of the extent of the deviation there present, and because certain additional coercive statements were made to the jury, we found undue coercion and, therefore, reversible error. We stated then, and repeat now, that a charge that does not conform with the ABA standards "should no longer be given in Maryland after the jury has retired." *Pinder, supra,* 31 Md. App. at 136. We did not, however, hold that

---

1. Amer. Bar Assoc. Standards Relating to Trial by Jury, § 5.4 (1968), quoted in Kelly, *supra,* 270 Md. at 143-144 and Pinder v. State, 31 Md. App. at 125-126 (1976).

the giving of such a charge would always necessarily amount to reversible error.

In the instant case the post-retirement charge, taken almost verbatim from a pre-*Kelly* civil case, *Leupen v. Lackey*, 248 Md. 19, 234 A. 2d 573 (1967), in which it was approved, contained elements of both the traditional *Allen* charge approved by the Supreme Court in 1896 and of the ABA charge. There were no extraneous coercive statements made to the jury.

Although the charge in the present case was given after the jury retired and the language was at variance with the ABA approved Allen-type instruction, the province of the jury was not invaded and the verdict was not unduly coerced. The variance here was neither as great nor as coercive as in *Pinder, supra.* The jury discussed and considered the issue for four hours before indicating they could not agree. After the charge in question was given, the jury continued to deliberate for three more hours before reaching the verdict. While the passage of time between charge and verdict cannot, without more, be dispositive as to the existence *vel non* of coercion, the length of the period is a proper subject for our examination in determining whether a verdict was coerced.

Notwithstanding our express disapproval of certain language used in the challenged instruction, *viz.*, "If your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct.", this charge, when considered in its entirety, as opposed to a truncated portion, was not such a flagrant deviation from the ABA approved Allen-type charge as to constitute reversible error.

*Judgments affirmed.*