WILLIAM PAUL BURNETTE, JR. *v.* STATE
OF MARYLAND

[No. 106, September Term, 1976.]

*Decided April 7, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Mark Colbin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This appeal concerns the propriety of an *Allen* instruction [1] given to a deadlocked jury in the criminal trial of William Paul Burnette, Jr.

William Burnette was charged in the Circuit Court for Prince George's County under a fifteen count indictment which included charges of kidnapping, assault and battery, and other crimes stemming from an incident which took place on June 7, 1974. At trial, Mr. Burnette did not dispute his agency in these offenses; his sole defense was that he was insane at the time.

Pursuant to Maryland Rule 828 g, the parties have submitted this case on an agreed statement of facts, much of which concerns the question of Mr. Burnette's sanity. According to the stipulated facts, in 1970 Mr. Burnette was treated at the District of Columbia General Hospital and diagnosed as suffering from paranoid schizophrenia. The examining psychiatrist at D. C. Hospital reported that Mr. Burnette had paranoid ideas "concerning little people in his head who were ordering him to carry out their violent instructions." Later, in 1972, the defendant was hospitalized

---

1. The term is derived from the instruction given in Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

and treated at St. Elizabeth's Hospital for what was diagnosed as "hysterical personality and drug dependance."

Concerning the defendant's sanity at the time of the commission of the offenses enumerated in the indictment, the defense offered the testimony of Dr. Roger Harris, a former Chief Resident in Psychiatry at the University of Maryland Hospital. Dr. Harris, after lengthy testimony, stated that in his opinion, at the time of the offenses, Mr. Burnette "was suffering from a severe mental disorder, namely, paranoid schizophrenia and multiple drug dependance; and that as a result of this disorder, [he] ... lacked substantial capacity to appreciate the criminality of his conduct."

The State, in rebuttal, offered the testimony of Dr. Ido Adamo, a staff psychiatrist at Clifton T. Perkins State Hospital where the defendant, by court order, had undergone a psychiatric examination. Dr. Adamo was one of five members of the Perkins's staff who administered a series of examinations to Mr. Burnette over a two week period. The Perkins's staff initially diagnosed Mr. Burnette "as suffering at the time of the offense from schizophrenia, paranoid type, with multiple drug dependence [and as a result] ... not responsible for the offenses charged." Several days later, the Perkins's staff changed its opinion. Due in part to changes in the defendant's behavior after the defendant had learned of the contents of the first report, the Perkins's staff concluded that Mr. Burnette, while suffering from a personality disorder, was in fact "responsible" at the time of the offenses.

With this conflicting evidence before it, the jury received its instructions and retired to deliberate. Four hours later the trial judge received the following note from the jury foreman:

> "Judge Mattingly, Your Honor, we are in accord with the fifteen possible verdicts. We cannot decide on the following issues: sane or insane . . . ."

The jurors returned to the jury box and the judge, over the

defendant's objections, read to them the following *Allen* instruction:

"Mr. Foreman, ladies and gentlemen of the jury, the Court has reviewed your note from the foreman stating that you are in accord on the fifteen possible verdicts and we cannot decide on the following issues. Sane or insane.

"The Court will further instruct you, Mr. Foreman, and ladies and gentlemen of the jury, that it observed that you have been out almost three hours on this case, almost four hours, excuse me, and had it under your consideration for that period of time. We instruct you that there are many cases in which absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror as a result of his own convictions and not a mere acquiescence in the conclusions of his fellows, each of you should examine the question submitted with candor and with a proper regard and deference to the opinion of others.

"It is your duty to decide this case if you can conscientiously do so, and you should listen with a disposition to be convinced to each other's arguments. If your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct.

"So, now I'm asking you to return to the jury room and deliberate further in light of these instructions."

The jury returned to the jury room and deliberated for another three hours before finding Mr. Burnette sane and guilty of kidnapping, assault and battery, and various other crimes for which he received sentences totaling forty years' imprisonment.

Upon appeal to the Court of Special Appeals, Mr. Burnette argued, *inter alia*, that the trial judge's use of an *Allen*

instruction was coercive and prejudicial. The Court of Special Appeals, while disapproving portions of the language used by the trial judge, affirmed the judgment on the ground that the instruction taken as a whole was not so prejudicial as to constitute reversible error. *Burnette v. State*, 32 Md. App. 277, 360 A. 2d 23 (1976). We granted certiorari limited to Mr. Burnette's contention that the *Allen* instruction was coercive and invaded the province of the jury.

In *Allen v. United States*, 164 U. S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896), the Supreme Court approved the use of the following instruction, delivered by a trial judge to a jury which was unable to reach a verdict:

> "[A]lthough the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it [is] their duty to decide the case if they [can] conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number [are] for conviction, a dissenting juror should consider whether his doubt [is] a reasonable one which [makes] no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority [is] for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which [is] not concurred in by the majority." [2]

Although many courts thereafter approved the use of the *Allen* instruction or one of its modifications (*see* Annot., 100

---

2. Designed to achieve jury unanimity in deadlock situations, this instruction has at times been referred to as the "dynamite" or "nitroglycerin" charge, Huffman v. United States, 297 F. 2d 754, 759 (5th Cir. 1962) (Brown, J. dissenting); the "shotgun instruction," State v. Nelson, 63 N. M. 428, 321 P. 2d 202, 204 (1958); and the "third degree instruction," Leech v. People, 112 Colo. 120, 146 P. 2d 346, 347 (1944).

A.L.R.2d 177), such instructions have, in recent years, come under increasing criticism by many state and federal courts on the grounds that they are coercive and intrude upon the function of the jury. Judge John Minor Wisdom, writing for the United States Court of Appeals for the Fifth Circuit in *Green v. United States*, 309 F. 2d 852, 854 (1962), said of the *Allen* charge:

> "There is small, if any, justification for its use. . . . The jury system rests in good part on the assumption that the jurors should deliberate patiently and long, if necessary, and arrive at a verdict — if, but only if, they can do so conscientiously. It is improper for the court to interfere with the jury by pressuring a minority of the jurors to sacrifice their conscientious scruples for the sake of reaching agreement."

*See also, e.g., United States v. Thomas*, 449 F. 2d 1177 (D.C. Cir. 1971); *United States v. Fioravanti*, 412 F. 2d 407 (3d Cir.), *cert. denied sub nom. Panaccione v. United States*, 396 U. S. 837, 90 S. Ct. 97, 24 L.Ed.2d 88 (1969); *United States v. Brown*, 411 F.2d 930 (7th Cir. 1969), *cert. denied*, 396 U. S. 1017, 90 S. Ct. 578, 24 L.Ed.2d 508 (1970); *Fields v. State*, 487 P. 2d 831 (Alaska 1971); *State v. Thomas*, 86 Ariz. 161, 342 P. 2d 197 (1959); *State v. Nicholson*, 315 So. 2d 639 (La. 1975); *State v. Randall*, 137 Mont. 534, 353 P. 2d 1054 (1960); *State v. Garza*, 185 Neb. 445, 176 N.W.2d 664 (1970); *State v. Marsh*, 260 Or. 416, 490 P. 2d 491, *cert. denied sub nom. O'Dell v. Oregon*, 406 U. S. 974, 92 S. Ct. 2420, 32 L.Ed.2d 674 (1972); *Commonwealth v. Spencer*, 442 Pa. 328, 275 A. 2d 299 (1971); *State v. Ferguson*, 84 S. D. 605, 175 N.W.2d 57 (1970).

The focus of these criticisms is common. It is recognized that a juror should not be encouraged, requested or required to surrender his conscientious convictions for the purpose of reaching a verdict. It is urged that the *Allen* instruction weakens or minimizes this principle by placing a premium on reaching a verdict. In particular, a growing body of opinion regards the typical use of "majority-minority" language as perhaps the most offensive, inherent defect of

*Allen*-type charges. In Note, *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge,* 53 Va. L. Rev. 123, 143 (1967), it was observed that:

"Although the language of the *Allen* charge contains a reminder that the jurors should vote only for a verdict with which they conscientiously agree, it may easily influence a minority juror to acquiesce in the majority vote. The charge is expressly directed at the minority jurors. They are importuned to reconsider their decision with a disposition to being convinced and told of their duty to decide the case if they can conscientiously do so. The emphasis of the charge is upon reaching a verdict, not upon voting one's conscientious convictions, and it hardly seems unreasonable that the jury, already frustrated by its inability to agree, will attach such a meaning to it. Moreover, since the majority is not usually urged to reconsider its position, there is an implication, buttressed by the particularly powerful position of the judge giving the instruction, that the majority is correct and that the minority should yield its position and conform to the majority. Even if the *Allen* charge may not in fact be coercive in a particular fact situation, at best it injects a temptation to the jury to settle for majority rule rather than the impartial individual determination of each juror. If the *Allen* charge in fact influences a juror to vote for conviction notwithstanding a conscientiously held belief that the state has not proved its case beyond a reasonable doubt, the defendant has been denied due process of law, since he has been convicted not on the basis of evidence presented in court but rather because of the juror's response to what he takes to be the desires of the judge."

Persuaded of the validity of these criticisms, the American Bar Association, through its Advisory Committee on

the Criminal Trial, concluded that the traditional *Allen* charge should no longer be used. *Standards Relating to Trial by Jury*, Commentary to § 5.4 (b) at 150. The Association did not, however, suggest that no instruction whatsoever should be given to juries who, after some deliberation, are unable to reach a verdict. Rather, it developed standards to govern instructions given in these situations.[3] While the standards note the duty of jurors to consult with one another during the course of deliberation, they do not do so by undermining the importance of honest conviction. The standards encourage each juror to maintain his integrity in the course of forming his final judgment: "Each juror must decide the case for himself." Reexamination of personal views is encouraged, but these views should be changed only if a juror becomes convinced that his views were erroneous. The fact that he may be in the minority is not a relevant consideration.

---

3. These standards read as follows:

"Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

The American Bar Association has suggested the use of the following instruction, quoted in *Kelly v. State*, 270 Md. 139, 143, 310 A. 2d 538 (1973), as being consistent with its approved standards:

> " 'The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> " 'It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> " 'You are not partisans. You are judges — judges of the facts. [In criminal cases substitute the following: Since this is a criminal case, you are judges — judges of both the law and the facts.] Your sole interest is to ascertain the truth from the evidence in the case.' Instruction 8.11 of *Jury Instructions and Forms for Federal Criminal Cases*, 27 F.R.D. 39, 97-98 (1961)"

This approved instruction is superior to the traditional *Allen* instruction in several respects. It does not charge the minority to doubt the reasonableness of its convictions when they are not concurred in by the majority. It thus avoids the coercive tendency of the *Allen* charge. All jurors, in the approved charge, are encouraged to deliberate and consult with one another. The minority is not protrayed as somehow the cause of the deadlock. The approved charge shifts the focus from the dissenting minority to the duty of all jurors

to deliberate and reevaluate the various viewpoints represented. The approved instruction is aimed at inducing jurors to join in conscientious deliberations in an honest attempt to reach a verdict.

The propriety of *Allen*-type instructions appears to have been considered by this Court only twice previously: *Leupen v. Lackey*, 248 Md. 19, 234 A. 2d 573 (1967), and *Kelly v. State, supra*, 270 Md. 139. *Leupen* approved the use of the traditional *Allen* instruction given in that case,[4] although the Court did point out that an *Allen* charge would not be proper in every case, 248 Md. at 25. The decision in *Leupen*, however, was limited by our later decision in *Kelly*. In *Kelly*, this Court, speaking through Judge J. Dudley Digges, broadly endorsed the American Bar Association approved charge, and, in particular, set forth guidelines for the trial bench concerning the propriety and timing of such a charge, 270 Md. at 143-144. Briefly stated, these guidelines are:

1) that *before* the jury retires, the ABA approved charge is "always proper";
2) that if the trial judge desires to "personalize" the charge given *before* the jury retires he has greater latitude in doing so then than later;
3) that *after* the jury retires the trial court "should closely adhere to the wording of the American Bar Association recommended instruction"; and that in the absence of such adherence a reviewing court will carefully scrutinize the language of the charge to determine whether the jury has been coerced or its province invaded.

In *Kelly*, therefore, this Court expressed its approval of the standards developed by the American Bar Association. We further acknowledged that use of the American Bar Association's suggested instruction, which is consistent with its standards, would meet with our approval. But, as we said, instructions which depart from the recommended instruction will be closely scrutinized to insure that they

---

4. The instruction used by the trial judge in the instant case was taken almost verbatim from *Leupen*.

conform to the spirit of the American Bar Association's developed standards, that is, to insure that they do not contain language which directly or indirectly coerces or otherwise invades the province of the jury. The presence of such language constitutes reversible error.

We reaffirm, however, what was said in *Kelly:* "We are not convinced of the need to imprison the trial judges of this State within the walls of foreordained verbiage." *Kelly v. State, supra,* 270 Md. at 142. We do not, therefore, require that the exact wording of the American Bar Association's approved instruction be the only instruction a trial judge may employ. He may "personalize" this charge, adopting minor deviations in language which adjust the charge to the circumstances encountered. This must, however, be done cautiously and in the spirit of the American Bar Association language. Deviations in substance will not meet with our approval. Coercion of the jury for the purpose of breaking a deadlock must be avoided.

Turning to the facts of the instant case, despite our holding in *Kelly*, the trial judge delivered a traditional *Allen* instruction. The instruction given was not a personalized version of the American Bar Association's recommended instruction. Rather, it was a slightly abridged version of the original language approved in the *Allen* case in 1896. Some of the important differences between the two charges can readily be seen in the following comparison (emphasis supplied):

| Instruction Given In This Case | ABA Recommended Instruction |
|---|---|
| "We instruct you that there are many cases in which *absolute certainty cannot be expected.*" | "The verdict must represent *the considered judgment of each juror.* In order to return a verdict, it is necessary that each juror agree thereto. *Your verdict must be unanimous.*" |

| Instruction Given In This Case | ABA Recommended Instruction |
|---|---|
| "*Although* the verdict must be the verdict of each individual juror as a result of his own convictions and not a mere acquiescence in the conclusions of his fellows, *each of you should examine* the question submitted with candor and *with a proper regard and deference to the opinion of others.*" | "[*D*]*o not surrender your honest conviction as* to the weight or effect of evidence *solely because of the opinion of your fellow jurors,* or for the mere purpose of returning a verdict." |
| "It is your duty to decide this case if you can conscientiously do so, and you should listen *with a disposition to be convinced* to each other's arguments." | "It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment." |
| "*If your views are contrary to those of the vast majority* you should *consider whether your views, which make no impression on the minds of so many equally intelligent jurors,* are correct." | "*Each of you must decide the case for yourself,* but do so only after an impartial consideration of the evidence with your fellow jurors. *In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.*" |

Clearly, the trial judge in this case did not "closely adhere," either in substance or spirit, to the American Bar

Association standards, as is required by *Kelly*. The instruction in this case begins by telling the jurors that "absolute certainty cannot be expected," whereas the American Bar Association's recommended instruction begins by pointing out that the verdict must be "the considered judgment of each juror" and must be unanimous. The *Allen* instruction here does pay passing attention to the important principle that honest judgment, and not mere acquiescence, should be that basis of a juror's decision, but it does so within a concessive clause: *"Although* the verdict must be ... [that] of each individual juror and not a mere acquiescence in the conclusions of his fellows." Thus, the emphasis of the instruction falls upon the following clause, namely that questions are to be considered with "proper regard and *deference* to the opinion of others." Although a definition of the phrase "proper regard and deference" is not given, the jury is later told that "[i]f your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct." It is difficult to imagine a minority juror who would not be placed in some discomfort on hearing this instruction. Criticism runs directly to *him*, and he might understandably conclude that proper "deference" to the opinions of the majority demands that he abandon his conscientious position. The "equally intelligent" majority, on the other hand, receives only flattering attention in this instruction. It is subjected to no criticism and receives, as such, no admonitions. If anything, the instruction might tend to unduly strengthen the majority's convictions, perhaps making the majority less willing to seriously engage in further deliberations. For, by tacitly affirming the "intelligence" of the majority's position, the trial judge gives it the gloss of acceptability.

In sum, we believe that the *Allen* instruction given in this case was coercive, and constituted reversible error.

We reiterate, however, our approval of the American Bar Association suggested instruction, and we emphasize further that the deviations from the American Bar Association standards permitted by *Kelly* are those

primarily concerned with form and style. These types of minor word changes, which allow the instruction to be "personalized," remain properly within the province of the trial judge. Deviations in substance, however, are not permitted.

> *Judgment of the Court of Special Appeals reversed, and case remanded to that court with directions to reverse the judgment of the Circuit Court for Prince George's County and remand the case for a new trial.*
>
> *Costs to be paid by Prince George's County.*