# MICHAEL STEVE WODOSLAWSKY *v.* STATE OF MARYLAND

[No. 821, September Term, 1976.]

*Decided July 7, 1977.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.

*Henry J. Noyes* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Thomas L. Heeney, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

On November 24, 1975, an automobile operated by appellant, Michael Steve Wodoslawsky, collided with a vehicle driven by Bernard Wilson, resulting in the death of Elizabeth Wilson, a passenger in the Wilson vehicle. On the following day appellant was charged in the District Court for Montgomery County with the crime of manslaughter by automobile. On January 8, 1976, he was indicted by the grand jury for Montgomery County for the same offense. The pending district court charge was then marked "returned to the files." Shortly thereafter appellant was arraigned in the Circuit Court for Montgomery County at which time he entered a plea of not guilty and requested a jury trial.

On June 21, 1976, trial began in the circuit court (Latham, J., presiding) pursuant to the indictment. At the close of the state's evidence, appellant moved to dismiss the indictment on the basis that although the circuit court and district court have concurrent jurisdiction in manslaughter by automobile cases,[1] the state, by virtue of having filed charges first with the district court, thereby selected its forum and thus precluded trial for this offense in the circuit court. In overruling the motion the trial judge reasoned:

> "I will tell you right now, Mr. Noyes [defense attorney], my essential ground for that is that I think that when he came in here on January 23, 1976, and entered a plea of not guilty to this particular indictment, and more importantly,

---

1. *See* Courts & Judicial Proceedings Article, § 4-302 (c); Md. Code, art. 27, § 388.

requested a trial by jury that this is the only court that can give him that trial by jury, and he then had for all purposes divested the District Court of any jurisdiction in the matter. * * * Secondly, I think that he cannot sleep on his rights, so to speak, and have that matter pending down in the District Court and come in here and plead and ask for his jury trial and then after all this delay and the trial is halfway through raise this point."

The trial continued until approximately noon on June 24, 1976, at which time the jury retired to deliberate. During the course of their deliberations, the jury sent five notes to the trial judge requesting copies of the relevant portions of the Motor Vehicle Code, information as to the authority of the police to obtain breath or blood samples, portions of Wilson's testimony on direct, cross-examination and redirect, a note as to why they had made such requests and an inquiry as to whether there was a body of case law relating to causes other than gross negligence and causality. The members of the jury adjourned for dinner at 7 p.m. with an admonishment not to discuss the matter, returned around 8:30 p.m. and at 10:30 p.m. sent their last note to the court stating that they had "reached a point wherein it appears that a verdict cannot be reached." They were returned to the court room at 10:45 p.m. whereupon the following colloquy ensued:

"THE COURT: Mr. foreman, the latest communication here would indicate that you have reached a point where you have agreed that you are going to disagree; is that right?

THE FOREMAN: Yes, sir.

THE COURT: I gather that you feel that no matter how much more deliberations you have that you would not be able to come to a verdict in this matter?

THE FOREMAN: That is a consensus of the jury; yes, sir.

THE COURT: All right, well, you will be

"discharged, then. I appreciate very much your service in this matter. I am sorry that you couldn't give us a verdict, but that is the way our system works. You are excused now. You won't be needed tomorrow. Of course, you will have to call in over the weekend and see whether you are needed Monday."

Thereafter, on July 8, 1976, a proceeding was held in the district court wherein the state entered a "*nolle prosequi* on the record." Appellant objected to the entry of the *nolle prosequi* arguing that his pending motion to dismiss the charges for lack of a speedy trial would not receive consideration. During the course of his argument appellant submitted two exhibits into evidence, namely, a copy of the circuit court indictment and a copy of the circuit court docket entries. The trial judge denied appellant's request for a hearing on the speedy trial motion, reasoning that such motion was rendered moot by the entry of the *nolle prosequi.*

Prior to his retrial in the circuit court, appellant filed therein a "Motion to Dismiss per Autrefois Acquit." At the hearing on this motion (Miller, J., presiding) held on July 16, 1976, appellant asserted (1) that there was no "manifest necessity" for the mistrial in the circuit court and (2) that by virtue of the district court proceedings, further prosecution would amount to double jeopardy. In denying the motion, the trial judge stated:

"The Court has had an opportunity, Mr. Noyes, to read the authorities that you cite, and, first of all, with regard to the declaration of a mistrial, while the cases do say that you should not declare a mistrial except for reasons of manifest necessity, they go on to say except for the most obvious reasons, and the Court feels that those cases deal with where a prosecutor was sick, and where a witness said something out of the courtroom, and I feel relatively certain the 'most obvious' reason is where the jury is hung.

> While it may have been more preferable to ask a few more questions or to seek the advice of counsel, after nine hours of deliberation I feel that there is nothing improper in declaring a mistrial.
>
> Now as far as the second ground goes, it is true that Maryland has adopted the hearing of evidence rule as opposed to the swearing of first witness in a non-jury trial, but the *Blondes* [*v. State*, 273 Md. 435 (1975)] case makes it abundantly clear to me that the evidence must be received before the entry of a nol pros, and that was not done in this case. Therefore, the motion is denied, the plea of jeopardy is denied."

Appellant thereupon filed this appeal (*see Neal v. State*, 272 Md. 323, 326 (1974)) and first contends that "the Circuit Court for Montgomery County had no jurisdiction over the subject matter of this case."

Appellant essentially asserts that "where each of two courts has concurrent jurisdiction, the court in which suit is first instituted is entitled to retain jurisdiction and the second court is without power to interfere." *Pinkston, Tr. v. Higham*, 224 Md. 513, 517 (1961). *See also Woodcock v. Woodcock*, 169 Md. 40 (1935), *Withers v. Denmead*, 22 Md. 135 (1864). He argues, on the basis of this rule, that once the state filed in the district court the charge of manslaughter by automobile, the state was powerless thereafter to have appellant indicted by the grand jury on the same charge and try him in the circuit court. It is a well established rule in civil cases that where courts have concurrent jurisdiction over the same subject matter, the court in which suit is first instituted retains jurisdiction to the exclusion of the coordinate court. We are not convinced, however, that this rule has application in criminal cases. Appellant has referred us to no case in which it has been so held. On the other hand, we think there are sound reasons why the rule should not be extended to criminal cases.

It is, of course, true that the state could not bring identical charges against an individual in courts having concurrent

jurisdiction over the subject matter of the charges and then proceed to trial thereon in each court since the accused's right to be free from being placed in double jeopardy would thereby be violated. But we know of no rule or principle of law, constitutional or otherwise, which compels the state, when it initially brings criminal charges against an individual, to make a binding election as to the forum in which the charges will ultimately be tried, any more than the state can be compelled to make a binding election that it bring the charges in the form of a warrant, an information, an indictment or any other form of charging the individual. In our view the state's attorney has the choice, subject to statutory and constitutional proscription, to determine the mode or means he will employ to initiate the criminal charges and the forum in which the ultimate trial will be conducted. *See Murphy v. Yates,* 276 Md. 475 (1975); *State v. Hunter,* 10 Md. App. 300 (1970); *Greathouse v. State,* 5 Md. App. 675 (1969).

Here the state's attorney was privileged to file the charging document in the district court or to proceed by way of an indictment. He apparently decided to take both courses and then elected to conduct the trial in the circuit court. Since there was no showing of any harassment of appellant or unlawful prejudice to him, we think appellant could not validly complain. Actually, appellant made no complaint until after the state had concluded putting on its case to the jury before whom appellant had elected to be tried. Under the circumstances we cannot subscribe to the argument that the circuit court had no jurisdiction over the subject matter of this case.

We find no merit in appellant's second contention that it was error to deny his motion to dismiss the indictment because there was no manifest necessity to declare a mistrial at the conclusion of appellant's first trial in the Circuit Court for Montgomery County and, therefore, a second trial would violate his right to be free from being placed twice in jeopardy for the same offense.

Well over a century ago the Supreme Court of the United States held that the double jeopardy provision in the Fifth

Amendment of the Federal Constitution did not preclude a retrial where the mistrial was declared because of the jury's inability to reach a verdict. *See United States v. Perez,* 9 Wheat. 579; 6 L. Ed 165 (1824). The fifth amendment double jeopardy provision has been held to be binding in state criminal prosecutions by virtue of the Fourteenth Amendment of the United States Constitution. *See Benton v. Maryland,* 395 U. S. 784 (1969). The Court of Appeals stated in *Cornish v. State,* 272 Md. 312, 318 (1974): "Ordinarily a retrial is permitted where the mistrial was caused by the jury's inability to reach a verdict." (Citations omitted.)

In the case *sub judice,* the jury retired to deliberate at noon and communicated its inability to reach a verdict to the court at 10:30 p.m. Deducting the time spent for dinner, the jury had deliberated approximately 9½ hours when they informed the court that they had "reached a point wherein it appears that a verdict cannot be reached." The trial judge thereafter inquired of the foreman if the jury would be able to reach a verdict if more time were allotted, to which he replied that it was the "consensus" of the jury that more time would prove fruitless. The jury's frustration was also evidenced by the numerous messages which were sent to the court requesting clarification of the pertinent law and facts.

It is apparent to us that the trial judge had little recourse but to declare a mistrial. It is difficult to see what could have been accomplished if more time had been afforded to deliberate. Indeed, had the court refused to declare a mistrial when it did, an atmosphere of coerciveness to reach a decision would have conceivably been created. *See Smoot v. State,* 31 Md. App. 138 (1976). We find no appeal in appellant's assertion that "[t]he trial Judge could have considered an Allen type charge, [2] or consulted with counsel regarding the giving of such charge." In the first place appellant did not seek consultation with the trial judge or request that such an instruction be given to the jury. In the second place, "resort to this charge and the

---

2. *See* Allen v. United States, 164 U. S. 492 (1896).

circumstances under which it should be given is a matter generally considered to be within the sound discretion of the presiding judge." *Fletcher v. State,* 8 Md. App. 153, 155 (1969). Moreover, the use of the "Allen" charge has been roundly condemned by many state and federal courts on the grounds that it is coercive and intrudes upon the functions of the jury. *See Burnette v. State,* 280 Md. 88, 371 A. 2d 663, 665 (1977). Under the circumstances we see no error in the judge's denial of appellant's motion to dismiss the indictment.

Finally, we do not agree with appellant's last contention that "jeopardy attached in the District Court proceedings" held on July 8, 1976. The point in the proceedings where jeopardy attaches was spelled out by the Court of Appeals in *Blondes v. State,* 273 Md. 435, 443-45 (1975):

> "One aspect of the double jeopardy prohibition which is firmly settled in this state as a common law principle, is that the entry of a *nolle prosequi*, without the defendant's consent, and after jeopardy has attached, operates as an acquittal and precludes further prosecution for the same offense. * * *
>
> On the other hand, where a *nolle prosequi* is entered before jeopardy attaches, the State is only precluded from prosecuting the defendant further under that indictment, but the defendant may be proceeded against for the same offense by another indictment or information. * * *
>
> * * *
>
> The Supreme Court has held 'that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge' or that ' "jeopardy attaches" when the trial commences . . . .' *United States v. Jorn,* 400 U. S. 470, 479, 480, 91 S. Ct. 547, 554, 555, 27 L.Ed.2d 543 (1971). The problem in particular cases is in determining when

a defendant is 'put to trial' or when 'the trial commences.'

It is generally held that, with respect to a jury trial, a defendant is placed in jeopardy when the jury is selected and sworn. * * *

As to a non-jury trial, the normal rule is that the trial commences, and thus jeopardy attaches, when the judge begins to hear or receive evidence. * * * Usually, this will be when the first witness begins to testify. However, it could be when documentary evidence is submitted, such as a stipulation or the record of prior proceedings * * * or when the defendant pleads guilty to the charges and thus establishes his guilt * * *."

The record is clear that at the very outset of the district court hearing, the prosecuting attorney announced: "Your Honor, the State would enter a *nolle prosequi* on the record per instructions from Thomas Heeney of the State's Attorney's Office." Defense counsel, in arguing his objection thereto, submitted a copy of the circuit court indictment and docket entries into evidence. Appellant asserts that this is sufficient to constitute a "submission of documentary evidence" under *Blondes.* We disagree. Clearly, the state's attorney proffered the *nolle prosequi* before the entry of these records into evidence. It is of no avail to appellant that the trial judge allowed counsel to argue his request for a hearing on the speedy trial motion during the course of which the aforementioned records were incidentally submitted.

> *Denial of appellant's motion to dismiss the indictment, affirmed; costs to be paid by appellant.*