# LAWRENCE ROME FOWLKES *v.* STATE OF MARYLAND

[No. 329, September Term, 1982.]

*Decided November 8, 1982.*

The cause was submitted on briefs to LISS, WEANT and ADKINS, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and

*Bradford C. Peabody, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Jane E. Pilliod, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Gary Honick, Assistant State's Attorney for Baltimore City,* for appellee.

WEANT, J., delivered the opinion of the Court.

On 11 January 1982 Lawrence Rome Fowlkes, appellant, was tried and convicted by a jury in the Criminal Court of Baltimore for the possession of heroin. Subsequently, appellant was sentenced to a four year term of imprisonment.

He confronts us with a contention that a guilty verdict was coerced by the trial court's instruction given after the jury retired for deliberation. Appellant further alleges that the court erred in failing to declare a mistrial, or at least in failing to give a proper jury instruction, after a detective testified about his conviction rate.

I.

The jurors initially deliberated for less than an hour after which they indicated that they were ready to deliver their verdict. Upon the return of the jury to the courtroom the following transpired:

THE CLERK: Mr. Fowlkes, remain standing. Ladies and gentlemen of the jury have you reached a decision?

THE JURY: We have.

THE CLERK: Who shall speak for you? Madam Forelady, please stand. Under Warrant Number 48112566, charging Mr. Fowlkes with possession of heroin, how do you find the Defendant?

THE FORELADY: They said guilty.

THE CLERK: Wish the Jury polled?

MR. HEDGEPETH [defendant's counsel]: I'd like the jury polled.

THE COURT: Ladies and gentlemen of the jury, we are going to poll the jury. I don't know if that was explained to you in indoctrination. It means each one of you will be asked to stand. Mr. Clerk, we'll ask you if in fact your verdict is the same as the Forelady. In other words, guilty, so that all 12 of you have to answer that you have unanimously voted guilty. Madam Forelady, you want to start with the Forelady first?

THE CLERK: Madam Forelady?

THE FORELADY: I didn't say either one because I didn't know whether to vote either way.

MR. HEDGEPETH: May we approach the bench, Your Honor?

THE COURT: Well, the verdict has to be unanimous. All 12 of you must agree. So I will send you back to the Jury room. If all 12 of you didn't agree, then there's no verdict. All 12 of you must be able to state in court that you have reached a verdict of guilty. I said that to you and I thought you understood that. So you will have to go back again to continue deliberations until all 12 of you agree. I don't think we ought to discuss it any further at this time. The jury may continue their deliberations at this time. All 12 of you may return back to the Jury room.

Within ten minutes after being excused from the courtroom the jurors returned and announced a unanimous verdict of guilty. At the second polling, all twelve jurors, including the forelady, asserted that their individual verdict was that of guilty.

Appellant alleges that the Court of Appeals' opinion in *Kelly v. State,* 270 Md. 139, 310 A.2d 538 (1973), which considered the Supreme Court's ruling in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896),

carefully delineates those instructions which may be given to the jury *after* they have begun their deliberations. However, in *Kelly,* the Court of Appeals distinguished the latitude accorded trial judges in giving instructions before, as opposed to after, the jury had deliberated *and has reached an apparent impasse.* This Court, interpreting *Kelly* in *Pinder v. State,* 31 Md. App. 126, 133, 355 A.2d 489, 493 (1976), quoted from *Kelly:* "*After* the jury commences deliberations the trial judge 'should closely adhere to the wording of the ABA recommended instruction.'" (Emphasis in original.) Judge Eldridge, speaking for the Court of Appeals in *Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1976), enunciated the extent of permissible deviations from the ABA standards *in the event of a deadlocked jury:*

> We reiterate, however, our approval of the American Bar Association suggested instruction, and we emphasize further that the deviations from the American Bar Association standards permitted by *Kelly* are those primarily concerned with form and style. These types of minor word changes, which allow the instruction to be "personalized," remain properly within the province of the trial judge. Deviations in substance, however, are not permitted. [*Id.* at 100-101, 371 A.2d at 669.]

There is no doubt that the trial judge's post-deliberation instruction in the impending matter varied in substance from the ABA standard. However, in our view, *Kelly, Pinder,* and *Burdette* are inapposite to this situation. The central focus in all of these cases, including *Allen* and its progeny, has been a criticism of coercive instructions intended to break a deadlock. Appellant's selective reading has overlooked the very proposition which must be present before *Kelly* applies: *a deadlock.*

> After the jury has been sequestered to deliberate, we think it advisable that a trial judge, *who decides to give an Allen-type charge because of an apparent deadlock,* should closely adhere to the wording of

the ABA recommended instruction. If he does not, the language selected will be subjected to careful scrutiny in order for it to be determined whether the province of the jury has been invaded and the verdict *unduly* coerced. [*Kelly v. State, supra,* at 144, 310 A.2d at 542 (emphasis added).]

A deadlock occurs when jurors differ because of *conscientiously held convictions.* In *Burnette v. State, supra,* at 94, 371 A.2d at 666, Judge Eldridge quoted from *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen charge,* 53 Va.L.Rev. 123, 143 (1967):

> If the *Allen* charge in fact influences a juror to vote for conviction *notwithstanding a conscientiously held belief that the state has not proved its case beyond a reasonable doubt,* the defendant has been denied due process of law, since he has been convicted not on the basis of evidence presented in court but rather because of the juror's response to what he takes to be the desires of the judge. [Emphasis added.]

In the present case we have a situation wherein the forelady's response, "I didn't say either one because I didn't know whether to vote either way" is open to two possible interpretations, *i.e.,* either she was uncertain whether, as forelady, she could vote, or she was *undecided* on her vote. Irrespective of which explanation approximates the cognitive processes of the forelady, in neither situation is there any concern that she possessed a conscientiously held conviction that the State had not met its burden. Without the difference of conscientiously held convictions, there can be no deadlock.

Having decided that *Kelly* and its issue are not dispositive of our problem, we turn to the question of whether the trial judge's comments were unduly coercive.

Appellant contends that the trial judge's instruction, "All

12 of you must be able to state in court that you have reached a verdict of guilty," directed the jury to bring in a verdict of guilty. However, we believe isolating a single part distorts the nature of the entire instruction. The jury stated in unison that they had reached a verdict. The forelady was the one who reported the jury's determination. And then, the forelady, the first juror to be polled said, it is not her verdict — that she did not vote either way. The judge cut off discussion at this time, reinstructed the jury as to the requirement of unanimity for any verdict and sent the jury back for further deliberation.

The trial judge was merely trying to explain that any verdict, guilty or innocent, must be unanimous among all twelve jurors. He used the example of the guilty verdict only by way of illustration after the forelady indicated that a guilty verdict had been reached. Under the totality of the circumstances, there was nothing suggestive in his instruction as to which verdict would be "proper" in this case. He intended only to clarify his earlier, completely neutral, description of a unanimous verdict which had obviously been misunderstood. The Court of Appeals took recognition of the role particular facts and circumstances play in structuring the appropriate instruction in *Kelly v. State, supra:*

> Clearly, the person in the best position to weigh these "facts and circumstances" is the trial judge. From his vantage point he has the opportunity to surmise which of the phrases in his instructions have been absorbed and which should be embellished or repeated. [*Id.* at 143, 310 A.2d at 541.]

Finally we note the return by the jury of an unanimous verdict within ten minutes of the delivery of the alleged coercive instruction. Obviously the forelady, now understanding the requirement that she vote, willingly accepted the unanimous decision of the other eleven "equally intelligent" jurors reached in less than an hour of deliberation. There was little time for her to have

surrendered conscientiously held scruples because of a prodding by the trial judge.[1]

## II.

Appellant also alleges that the trial court erred in failing to declare a mistrial or to give a proper jury instruction after a detective testified about his conviction rate. During the exploration of his qualifications as an expert, the detective, a four-year member of the Narcotics Division of the Baltimore City Police Department, blurted out:

WITNESS: I had over three hundred cases in court, 125 search and seizure warrants and I lost one case in court.

MR. HEDGEPETH [defendant's counsel]: Objection, Your Honor.

THE COURT: Sustain the objection.

MR. HEDGEPETH: Move to strike.

THE COURT: Strike it. You have worked for years in narcotics?

THE WITNESS: Yes, sir.

THE COURT: Okay. All right, I'll —

MR. HEDGEPETH: Nothing further, Your Honor.

The question of mistrial is not properly before this Court. Appellant did not move for a mistrial after this comment was made and hence this issue was not tried and decided by the lower court. Maryland Rule 1085.

---

1. We find support for our belief that jurors do not abdicate conscientiously held convictions in ten minutes in a review of the cases. In Pinder v. State, *supra*, the jury returned a guilty verdict one hour and thirty-three minutes after the dynamite charge. In Smoot v. State, 31 Md. App. 138, 355 A.2d 495 (1975), it took two separate post deliberation *Allen*-charges and several hours of additional compromise before the jury returned a verdict of guilty. Finally, in Burnette v. State, *supra*, the jurors required an additional three hours after the dynamite charge nudged them into rendering a guilty verdict. In *Pinder, Smoot,* and *Burnette,* the trial judge's comment was found to have invaded the province of the jury and to have been unduly coercive.

In addition, appellant urges us to find error in the trial court's omission of a proper jury instruction relating to the irrelevancy of the detective's conviction rate. However, the transcript reveals the following dialogue after jury instructions were delivered:

THE COURT: Any exceptions?

MR. HEDGEPETH: Satisfactory, Judge.

This matter is not reviewable as of right since no objection to the omission was entered by appellant. Maryland Rule 757 h. This rule requires objections to instructions to be made in accordance with Rule 757 f.

> If a party has an objection to any instructions, to any omission therefrom, or to the failure to give an instruction he shall make the objection on the record before the jury retires to consider its verdict and shall state distinctly the matter or omission, or failure to instruct to which he objects and the grounds of his objection.

Thus not only did appellant fail to object, but he specifically waived the opportunity to have a corrective instruction made.

Finally, Rule 757 h *permits* this Court to take cognizance of and correct any plain error in the instructions, material to the rights of the defendant, even though the error was not objected to in the trial court. Nonetheless, we believe that any potential prejudice stemming from the detective's comment could have been dispelled by an appropriate instruction. It was, therefore, specifically waived by appellant; the error was not, fundamental or plain, material to the rights of the appellant.

*Judgment affirmed.*
*Costs to be paid by the appellant.*